
UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS ARDANI JUAN LUCAS,<br><br>              Petitioner,<br>v.<br>CHRISTOPHER J. LaROSE, Senior Warden Otay Mesa Detention Center; PAMELA BONDI, United States Attorney General; KRISTI NOEM, Secretary of the Department of Homeland Security; PATRICK DIVVER, ICE San Diego Field Office Director, in their official capacities,<br><br>              Respondents. | Case No.: 3:25-cv-02973-GPC-JLB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

   On November 3, 2025, Petitioner Lucas Ardani Juan Lucas ("Petitioner") filed a petition for writ of habeas corpus, naming the Warden of the Otay Mesa Detention Center, Immigration and Customs Enforcement and Removal Operations ("ICE")'s Field Office Director for the San Diego Field Office, and several other individual agency officials as respondents ("Respondents"). ECF No. 1. Respondents filed a response in opposition to the petition on November 10, 2025, ECF No. 3, and Petitioner filed a traverse that same day, ECF No. 5. The Court finds the matter suitable for disposition without oral argument

1

pursuant to Local R. 7.1(d)(1). For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus.

## BACKGROUND

Petitioner, a Guatemalan national, arrived in the United States in 2018 when he was twelve years old. ECF No. 1, ¶ 25. He came to the United States to flee racial discrimination and gang violence in Guatemala. *Id.* Petitioner attended and graduated high school in the United States and is a derivative beneficiary of a pending U visa application. *Id.* Petitioner works at a sushi restaurant. *Id.*

In December 2018, the Department of Homeland Security ("DHS") detained Petitioner and issued him a Notice to Appear (NTA) for a removal hearing. *Id.* ¶ 26. The NTA charged Petitioner with removability under § 202(a)(6)(A)(i) of the Immigration and Nationality Act as an alien present in the United States without being admitted or paroled. *Id.* at ¶ 27. Petitioner conceded removability. *Id.* DHS released Petitioner on his own recognizance. *Id.* ¶ 26.

Petitioner then filed an application for asylum and was issued an employment authorization. *Id.* ¶ 28. In November 2021, an immigration judge administratively closed the pending removal case. *Id.* ¶ 29. Then, in June 2025, the immigration judge granted DHS's motion to re-calendar the removal case, and a hearing for Petitioner before the Executive Office for Immigration Review was set for February 26, 2026. *Id.* ¶ 30; ECF No. 3-1, at 6. In October 2025, DHS directed Petitioner to appear at the Enforcement and Removal Operations (ERO) for a check in. ECF No. 1, ¶ 31. When Petitioner attended the check in, DHS detained him and sent him to the Otay Mesa Detention Center, where he remains today. *Id.*

Once detained, Petitioner filed a motion for custody redetermination hearing. *Id.* ¶32. The immigration judge denied the bond request, concluding that he has no jurisdiction

to redetermine bond per the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*. *Id.*[1]

On November 3, 2025, Petitioner filed a petition for writ of habeas corpus. ECF No. 1. The Petition asserts that Petitioner's detention violates the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause. ECF No. 1, ¶¶ 33-46. Thus, Petitioner requests (1) a writ of habeas corpus ordering Petitioner's release or, alternatively, ordering Respondents to immediately schedule a bond hearing on the merits before an immigration judge, and (2) an order prohibiting respondents from continuing to detain petitioner on the basis that he is subject to detention pursuant to 8 U.S.C. § 1225(b)(2), and (3) an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). ECF No. 1, at 8-9.

## LEGAL STANDARD

### I. Section 2241 Habeas Corpus

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

---

[1] In *Matter of Yajure Hurtado*, decided September 5, 2025, the Board of Immigration Appeals (BIA) stated that any individual who entered the United States without permission is an "applicant for admission" and must, therefore, be detained during removal proceedings pursuant to 8 U.S.C. § 1225(b)(2). 29 I&N Dec. 216, 228 (BIA 2025). The BIA also held that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id.* at 216.

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## II.     Detention and Removal Statutory Framework

Petitioner and Respondents dispute whether Petitioner's detention is governed by 8 U.S.C. § 1225 or § 1226. The removal and detention of noncitizens is primarily governed by these two statutes:

### A. Section 1225

"Section 1225 governs DHS's determination of admissibility for a noncitizen seeking entry into the country, which 'generally begins at the Nation's borders and ports of entry.'" *Martinez Lopez v. LaRose*, No. 25-CV-2717-JES-AHG, 2025 WL 3030457, at *3 (S.D. Cal. Oct. 30, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). The section provides for the inspection of "applicants for admission," who are defined as "alien[s] present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). During inspection, an immigration officer may deem certain noncitizens who are "arriving in the United States" inadmissible and order their removal without further hearing or review. 8 U.S.C. § 1225(b)(1)(A)(i); *see also Martinez Lopez*, 2025 WL 3030457, at *3. Other "applicant[s] for admission" who are "seeking admission" are subject to mandatory detention pending the duration of removal proceedings unless the examining officer determines that the individual is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

### B. Section 1226

Section 1226, which governs the "usual removal process," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108, (2020), generally governs the process under which noncitizens, located within the United States, are arrested and detained pending their removal. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal."). It provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government may then either continue to detain the individual or release them on bond or conditional parole. *Id.* § 1226(a)(1)-(2). "The initial determination is made by the arresting immigration officer, but noncitizens may lodge an appeal in a bond hearing before an immigration judge." *Martinez Lopez*, 2025 WL 3030457, at *4 (citing 8C.F.R. §§ 1236.1(c)(8), (d)(1)). Noncitizens who have committed certain crimes described in § 1226(c) are not subject to release under § 1226(a).

## DISCUSSION

### I. Jurisdiction

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241; federal question, 28 U.S.C. § 1331; original jurisdiction, 28 U.S.C. § 1346; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedures Act, 5 U.S.C. § 701; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. ECF No. 1, ¶ 3. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims per 8 U.S.C. § 1252(b)(9) and (g). ECF No. 3 at 6-10. As previously found by this Court and others in this District, the Court finds that neither statute bars jurisdiction. *See, e.g.*, *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *3-4 (S.D. Cal. Sept. 3, 2025); *Noori v. Larose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *6-7 (S.D. Cal. Oct. 1, 2025).

**A. Section 1252(g) – Decisions by Attorney General**

Section 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). Section 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. It "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." 8 U.S.C. § 1252(g). However, Petitioner does not challenge the decision to commence proceedings. Instead, Petitioner challenges the legality of detention during removal proceedings. ECF No. 1, ¶ 35.

Further, a decision to detain Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

**B. Section 1252(b)(9) – Zipper Clause**

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising

6

from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) is seen as a general jurisdictional limitation that channels judicial review of immigration decisions and acts as a zipper clause. *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 483 (1999). "However, what it 'zips' are requests for review of various kinds of agency action which are heard by means of petitions for 'judicial review.' It does not affect petitions for habeas corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133, 1139 (9th Cir. 2000). Claims that are "independent of or collateral to the removal process," including the legality of detention, fall outside the scope of § 1252(b)(9). *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (internal quotation marks and citation omitted) ("Section 1252(b)(9) is also not a bar to jurisdiction over noncitizen class members' claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Respondents claim that Petitioner is challenging the government's decision to detain him in the first place, creating a bar under § 1252(b)(9). ECF No. 3, at 9. However, Petitioner is, instead, challenging his continued detention under § 1225(b)(2). ECF No. 1, ¶ 25. "Petitioner's detention may be during, but is nonetheless independent of, the removal proceedings." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *4 (S.D. Cal Oct. 30, 2025). Thus, § 1252(b)(9) does not present a jurisdictional bar.

**C. Exhaustion**

In the alternative to their jurisdictional arguments, Respondents argue that Petitioner has failed to exhaust his administrative remedies and that the Court should require that he do so. ECF No. 3, at 10 n.2. Plaintiff counters that the exhaustion requirement should be waived for futility in light of the BIA's decision in *Matter of Yajure Hurtado*. ECF No. 5, at 4.

"There is no statutory requirement under § 2241 to exhaust direct appeals before filing a petition for habeas corpus." *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *5 (S.D. Cal. Nov. 4, 2025). However, the Ninth Circuit has held that "as a prudential matter" habeas petitioner must "exhaust available . . . judicial remedies before seeking relief under § 2241." *Id.* (quoting *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004)). Courts have discretion to waive a prudential exhaustion requirement "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). To waive the prudential exhaustion requirement, a habeas petitioner must show that at least one *Laing* factor applies. *Id.* (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018)).

The Court finds Petitioner has met his burden that pursuit of administrative remedies would be futile. As explained by another court in this district:

> The BIA [Board of Immigration Appeals] issued *Matter of Yajure Hurtado* . . . on September 5, 2025 as a precedential decision, which "serve[s] as precedent[ ] in all proceedings involving the same issue or issues." The BIA decision found that noncitizens who are present in the United States without admission are deemed to be "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and ineligible for a bond hearing . . . Therefore, appeals to the BIA would be futile because it will find Petitioners subject to mandatory detention pursuant to *Matter of Yajure Hurtado* under the very statute that Petitioners are challenging.

*Beltran*, 2025 WL 3078837, at *4 (citations omitted).

Accordingly, the Court waives the prudential exhaustion requirement.

## II. Merits

Petitioner challenges his current detention on statutory and constitutional grounds. The Court will first address Petitioner's argument that his re-detention violates the Due

Process Clause of the Fifth Amendment. The Court will next assess whether, to the extent Petitioner may be detained, his detention is governed by § 1225 or § 1226.

### A. Petitioner's Continued Detention Violates His Due Process Rights

Petitioner argues that his re-detention in October 2025—after he had been detained and released on his own recognizance in 2018—without any explanation or change in circumstances violates the Due Process Clause of the Fifth Amendment. Respondents do not address this argument, arguing only that § 1225(b) is the applicable detention authority for Petitioner.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner's: "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the

1  government that [an individual is] neither a flight risk nor a danger to the community."
2  *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC
3  (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not
4  re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo*
5  *Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th
6  Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

7  Here, because Petitioner was detained and then released from DHS custody on his
8  own recognizance, he maintained a protected liberty interest in remaining out of custody.
9  The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481. "The
10 constitution typically 'requires some kind of a hearing *before* the State deprives a person
11 or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL
12 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S.*
13 *v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28,
14 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what
15 procedures are required by due process, the Court evaluates the three-part test set forth in
16 *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514,
17 at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the
18 risk of an erroneous deprivation" without additional procedures and "the probable value .
19 . . of additional or substitute procedural safeguards," and (3) the "Government's interest,
20 including the function involved and the fiscal and administrative burdens imposed by the
21 additional procedures." 424 U.S. at 335.

22 As to the first *Mathews* factor, Petitioner has a significant private interest in his
23 continued liberty. Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12;
24 *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

25 Turning to the second *Mathews* factor, "it is clear that there is a significant risk that
26 the government will erroneously deprive [Petitioner] of that liberty interest if it does not

provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, petitioner has not received any bond or custody hearing, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner in 2018 on his own recognizance, immigration officers determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have not alleged that there has been a change in circumstance since Petitioner's 2018 release. Indeed, Petitioner's DHS file confirms that he has "no criminal history," ECF No. 3-1, at 6, and the record indicates that Petitioner has complied with all obligations set forth in his Notice to Appear, including appearing for the ERO "check-in" at which he was detained, *see* ECF No. 5, at 5. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). There is also no concern that a hearing will delay or obstruct Respondents efforts to remove Petitioner, as Petitioner has already been placed in full removal proceedings. *See* ECF No. 1, ¶ 14, *G.S. v. Bostock*, 2025 WL 3014274, at *9;

*Salcedo Aceros*, 2025 WL 2637503, at *12. In sum, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15.

**B. Petitioner's Detention and Release Proceedings are Governed by § 1226.**

In addition to challenging the constitutional validity of petitioner's re-detention, Petitioner's habeas petition further raises the question of whether § 1225(b)(1) or § 1226(a) applies to his detention. Respondents contend that Petitioner is an "alien present in the United States who has not been admitted," and is thus an "applicant for admission" per the plain language of the § 1225(a)(1) and subject to the mandatory detention provisions of § 1225(b)(2). ECF No. 3, at 10. Petitioner asserts that, to the extent he is subject to detention, his detention is governed by § 1226.

The Court agrees with Petitioner. "As a preliminary matter, whether the Government may have had the power to detain [Petitioner] under 1225(b), the reality is that the detention authority consistently applied by the government to [Petitioner] since his arrival in the

United States has always been § 1226." *Salcedo*, 2025 WL 2637503, *8. When Petitioner entered the United States in 2018, the Government placed him in normal removal proceedings under § 1229, not § 1225(b)(1), and chose to release him on his own recognizance under § 1226(a), not hold him in mandatory detention under § 1225(b)(2). *See id.*; *see also Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (finding that "the phrase 'release on recognizance'" can be "another name for 'conditional parole' under § 1226(a).").

Sections 1226(a) and 1225(b) cannot be applied to Petitioner simultaneously, as one provides for discretionary release with procedural protections while the other mandates detention without discretion. *Salcedo*, 2025 WL 2637503, *8. History indicates that Petitioner has previously been subject to § 1226(a). The government cannot now "simply switch tracks" and purport to subject Petitioner to mandatory detention under § 1225(b) after previously releasing him under § 1226(a). *Acosta v. Bondi*, No. 25-CV-09601-HSG, 2025 WL 3229097, at *3 (N.D. Cal. Nov. 19, 2025).

Aside from the fact that Petitioner was previously detained under § 1226(a) and the Government cannot now switch tracks, the statutory language further indicates that § 1226(a) rather than § 1225(b) applies to Petitioner.

As discussed above, § 1225 governs expedited removal proceedings and concerns "applicants for admission" who are defined as "alien[s] present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). If an applicant "who is arriving in the United States" is deemed inadmissible after inspection, the applicant will be subject to expedited removal "without further hearing or review." *Id.* § 1225(b)(1)(A)(i); *see also Martinez Lopez*, 2025 WL 3030457, at *3. Other applicants for admission who are "seeking admission" will be mandatorily detained pending removal proceedings unless they are "clearly and beyond a doubt entitled to be admitted." *Id.* §

1225(b)(2)(A). In contrast, § 1226 is the "usual removal process" and does not concern expedited removal. *See Thuraissigiam*, 591 U.S. at 108. It provides that while removal proceedings are pending, a noncitizen "may be arrested and detained," but that the government "may release the alien . . . on conditional parole." *Id*. § 1226(a). Once the government makes an initial decision to either detain or release the noncitizen, the noncitizen may request a bond hearing before an immigration judge. *Id* § 1226(a)(1)-(2); 8 C.F.R. § 1236.1.

As an initial matter, "the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted." *See*, *e.g.*, *Beltran*, 2025 WL 3078837, at *5; *Martinez Lopez*, 2025 WL 3030457, at *5 (adopting the reasoning of *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025)). Respondent's interpretation of the phrase "seeking admission" in § 1225(b)(2)(A) would "seemingly render that phrase mere surplusage," such that "the language could be deleted while retaining the same statutory meaning." *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). Such an interpretation runs counter to the interpretive canon that a court "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Rodriguez v. Sony Computer Ent. Am.*, LLC, 801 F.3d 1045, 1051 (9th Cir. 2015).

Instead, "seeking admission" is best understood to require "an affirmative act such as entering the United States or applying for status." *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see also Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the

government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). Thus, here, Petitioner was not "seeking admission" within this interpretation. He was arrested in the interior of the United States, not while presenting himself at the gate of entry to attempt to apply for admission.

Second, Respondents' interpretation blurs the lines between § 1225(b) and § 1226(a). The Supreme Court has acknowledged that "U.S. immigration law authorizes the government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Thus, the Supreme Court has interpreted § 1225(b) as applying to "aliens seeking admission to the country," while § 1226(a) applies to "aliens already in the country." *Id.* Here, Petitioner is sensibly characterized as a noncitizen "already in the country" rather than one "seeking admission" given that he has lived in the United States for 8 years and had a pending immigration proceeding at the time of his detention.

In sum, based on the statutory language and Petitioner's facts, the Court finds that Petitioner is not subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's removal proceedings are governed by § 1226(a).[2]

## CONCLUSION

Based on the reasoning above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

---

[2] Having reached its conclusion on Petitioner's INA and due process claims, the Court declines to decide the merits of Petitioner's APA claim.

2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody. DHS **SHALL NOT** impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

4. Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records by **December 19, 2025,** and Respondents are instructed to file any opposition by **January 9, 2026.**

**IT IS SO ORDERED.**

Dated: December 4, 2025

Hon. Gonzalo P. Curiel
United States District Judge